1 | Christopher Sproul (State Bar No. 126398)
Brian Orion (State Bar No. 226895)
2 | ENVIRONMENTAL ADVOCATES                                           JS-6
5135 Anza Street
3 | San Francisco, California 94121
Telephone: (415) 533-3376, (510) 847-3467
4 | Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com,
5 | borion@enviroadvocates.com

6 | Fredric Evenson (State Bar No. 198059)
ECOLOGY LAW CENTER
7 | ~Monterey Bay~
P.O. Box 1000
8 | Santa Cruz, CA 95061
Telephone: (831) 454-8216
9 | Email: evenson@ecologylaw.com

10 | Attorneys for Plaintiff
Los Angeles Waterkeeper

11

UNITED STATES DISTRICT COURT

12

CENTRAL DISTRICT OF CALIFORNIA

13

14 | LOS ANGELES WATERKEEPER,            Case No. 2:19-cv-07213-MWF-JEM

15 |           Plaintiff,               [Proposed]  Consent Decree
v.
16
COMMERCIAL SANDBLAST COMPANY,
17
                    Defendant.
18

19

20 |     **WHEREAS**, Los Angeles Waterkeeper (hereinafter "Waterkeeper") is a non-profit public

21 | benefit corporation dedicated to the preservation, protection, and restoration of the environment,

22 | the wildlife and the natural resources of all waters of California, including the Los Angeles River

23 | and Pacific Ocean;

24 |     **WHEREAS**, Waterkeeper alleges that Defendant Commercial Sandblast Company is the

25 | owner and operator of the facility located at 2678 East 26th St., Vernon, California (hereinafter

26 | "the Facility") or have caused pollutants to be discharged to waters of the United States from the

27 | Facility;

28 |     **WHEREAS**, Defendant performs abrasive sandblasting, painting, and coating at the

Facility;

**WHEREAS**, storm water flows off-site from the Facility into the Los Angeles River;

**WHEREAS,** discharges from the Facility are presently regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit NO CAS000001 adopted by the California State Water Resources Control Board ("State Board") via Water Quality Order No. 2014-0057-DWQ, which became effective July 1, 2015, as amended by Order 2015-0122-DWQ, which was adopted by the State Board on November 6, 2018 ("Industrial Storm Water Permit"), and were previously regulated by the previous version of the Industrial Stormwater Permit adopted by Water Quality Order No. 97-03-DWQ ("1997 Industrial Storm Water Permit"). Discharges from the Facility are further regulated by the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS,** on May 10, 2019, Waterkeeper provided notice of violations of the CWA by Defendant and of Waterkeeper's intention to file suit against Defendant to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of the State Board; the Executive Officer of the California Regional Water Quality Control Board, Region 3 ("Regional Board"); the U.S. Attorney General, and the Defendant ("Notice Letter") as required by the CWA, 33 U.S.C. § 1365(b)(1)(A);

**WHEREAS**, on August 19, 2019, Waterkeeper filed a complaint against Defendant in the United States District Court, Central District of California alleging ongoing violations of the CWA;

**WHEREAS**, this Consent Decree shall be submitted to the EPA and United States Department of Justice ("DOJ") for the statutory review period pursuant to 33 U.S.C. §1365(c) and 40 C.F.R. § 135.5;

**WHEREAS**, Waterkeeper and Defendant have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings and without any admission of liability on the part of the Defendant; and

2

1      **WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made

2  in compliance with all applicable Federal and State laws and local rules and regulations.

3

4  **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND**

5  **ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

6

7  **I. GENERAL OBJECTIVES**

8      1.    The objectives of this Consent Decree are:

9         a.    To ensure that Defendant continues to improve its efforts to comply with the

10  CWA and with the 2018 Industrial Storm Water Permit Amendment;

11         b.    To ensure that Defendant continues to use, implement, and improve ways,

12  means, and methods to prevent or reduce the discharge of pollutants in storm water runoff from

13  the Facility.

14  **II. DEFINITIONS**

15      2.    Unless otherwise expressly defined herein, terms used in this Consent Decree which

16  are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning

17  assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in

18  this Consent Decree, the following definitions apply:

19      "Consent Decree" means this Consent Decree and any attachments or documents

20  incorporated by reference.

21      "Day" means a calendar day. In computing any period of time under this Consent Decree,

22  where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period

23  runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State

24  Holiday.

25      "Design Storm" means the volume of runoff produced from an 85th percentile, 24 hour

26  storm event.

27      "Effective Date" means the effective date of this Consent Decree, which shall be the date it

28  is entered by the Court.

**III. JURISDICTION AND VENUE**

3.     This Court has jurisdiction over the subject matter of the claims asserted by Waterkeeper pursuant to CWA section 505(a), 33 U.S.C. § 1365(a), 28 U.S.C. §§ 1331, 1355, and 1367. Venue is proper in this judicial district pursuant to section CWA §§ 309(b), 505(c); 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. § 1391(b) and (c). The parties waive any and all objections that they may have to the Court's jurisdiction to enter and enforce this Consent Decree. The Complaint states claims upon which relief may be granted pursuant to CWA section 505, 33 U.S.C. § 1365. Waterkeeper has standing to bring this action.

**IV. EFFECT OF CONSENT DECREE/RELEASE OF CLAIMS**

4.     Waterkeeper does not, by its consent to this Consent Decree, warrant or aver in any manner that Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation.

5.     This Consent Decree is neither a permit nor a modification of existing permits under any federal, state, or local law and in no way relieves Defendant of its responsibilities to comply with all applicable federal, state and local laws and regulations.

6.     Compliance with this Consent Decree, including all monetary payments due under this Consent Decree (including but not limited to the payment of any stipulated payments) and the completion of all remedial measures required pursuant to this Consent Decree resolves Waterkeeper's civil claims for the violations alleged against Defendant in this Action.

7.     Waterkeeper's Release: Upon the Effective Date of this Consent Decree, Waterkeeper hereby releases Defendant, and its officers, employees and successors and assigns, from all CWA violations alleged in the Complaint up to and including the Effective Date of this Consent Decree. Except for claims for Defendant's failure to comply with this Consent Decree, Waterkeeper further releases Defendant, and its successors and assigns, from all claims pertaining to alleged violations of the CWA that may occur due to discharges of storm water from the Facility between the Effective Date and the termination of this Consent Decree.

8.     Defendant's Release: Upon the Effective Date of this Consent Decree, Defendant, on its behalf and on behalf of its current and former officers, directors, employees, members, and

4

1  each of their successors and assigns, and its agents, attorneys, and other representatives releases

2  Waterkeeper (and its current and former officers, directors, employees, members, parents,

3  subsidiaries, and affiliates, and each of its successors and assigns, and its agents, attorneys, and

4  other representatives) from, and waives all claims which arise from or pertain to this action,

5  including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or

6  any other sum incurred or claimed or which could have been claimed for matters associated with

7  or related to Waterkeeper's Notice Letter and Complaint up to the Effective Date.

8  **V. APPLICABILITY**

9        9.    The provisions of this Consent Decree apply to and bind Waterkeeper and Defendant

10  (collectively, "Parties"), including any successors or assigns. The Parties certify that their

11  undersigned representatives are fully authorized to enter into this Consent Decree, to execute it

12  on behalf of the Parties, and to legally bind the Parties to its terms.

13       10.   The Parties agree to be bound by this Consent Decree and not to contest its validity in

14  any subsequent proceeding to implement or enforce its terms. By entering into this Consent

15  Decree, Defendant does not admit liability for any purpose as to any allegation or matter arising

16  out of the Action. Nothing in this Consent Decree shall constitute an admission of any fact or a

17  waiver of any right unless specifically set forth herein.

18       11.   No change in ownership or corporate or other legal status of Defendant or any

19  transfer of Defendant's assets or liabilities shall in any way alter the responsibilities of Defendant

20  or any of its successors or assigns thereof under this Consent Decree. In any action to enforce

21  this Consent Decree, Defendant shall not raise as a defense the failure by any of its agents,

22  servants, contractors, employees, successors or assigns to take actions necessary to comply with

23  this Consent Decree, unless such actions were prevented by a force majeure.

24       12.   Except as otherwise provided in this Part, the sale or transfer of ownership or

25  operation of any portion of the Facility does not relieve Defendant of its obligations under this

26  Consent Decree. Not later than thirty (30) days prior to sale or transfer of ownership or operation

27  of any portion of the Facility, Defendant shall give written notice of this Consent Decree to each

28  purchaser or successor in interest. Defendant also shall give written notification to Waterkeeper,

1    in accordance with Part XXIV (NOTICES AND SUBMISSIONS), of the anticipated sale or

2    transfer of ownership or operation of the Facility at least thirty (30) days prior to the scheduled

3    date of such sale or transfer and may seek from the Court a modification of this Decree that

4    would transfer responsibility for compliance with some or all of these provisions to its successor.

5    The Court shall grant such request if the successor is ready, willing and able to fully implement

6    obligations the successor would assume under this Consent Decree.

7    **VI. DISCHARGE LIMITATIONS**

8        13.    <u>Non-Storm Water Discharge Prohibition</u>: Defendant shall not discharge any

9    wastewater constituting non-stormwater from the Facility into the Los Angeles River. Any such

10   discharges shall be considered a breach of this Consent Decree.

11       14.    <u>Storm Water Pollutant Limits and Reduction Goals</u>: Pollutants in storm water

12   discharges from the Facility shall not exceed the NAL Levels in Table 1.

13   **VII. <u>REMEDIAL MEASURES</u>**

14       **A.       Initial Storm Water Pollution Control Measures**

15       15.    In addition to maintaining the current BMPs at the Facility, Defendant shall

16   develop and implement the BMPs identified herein, as well as any other BMPs necessary to

17   comply with the provisions of this Consent Decree and the Industrial Storm Water Permit or the

18   then-applicable Industrial Storm Water Permit. Specifically, Defendant shall develop and

19   implement BMPs to prevent and/or to reduce contamination in storm water discharged from the

20   Facility sufficient to reduce the levels of pollutants in storm water discharges below the levels in

21   Table 2.

22       16.    <u>Good Housekeeping Practices</u>: Defendant shall implement the following good

23   housekeeping BMPs.

24           i.    <u>Patching</u>: Defendant shall patch all cracks in the impervious (paved) ground

25               surface at the Facility.

26           ii.   <u>Sweeping</u>:  Within thirty (30) days of the Effective Date, Defendant shall

27               purchase or make arrangements to lease a regenerative sweeper at the Facility

28               (*i.e.*, a sweeper that uses bursts of air to mobilize and vacuum particulate

6

matter), or retain an outsourced contractor to utilize a regenerative sweeper for site sweeping at the Facility. Within five (5) days of acquiring the regenerative sweeper or retaining an outside contractor, Defendant shall commence implementing sweeping of any accessible impervious ground surface at the Facility using a regenerative sweeper according to the following schedule: at least twice a week and at least 24 hours prior to any precipitation event where more than 0.1 inches of rain is predicted with a minimum likelihood of occurrence of 50% by the nearest National Oceanic and Atmospheric Administration rain gauge. For impervious ground surfaces at the Facility not accessible with a mechanical regenerative sweeper, Defendant shall hand sweep these areas.

iii.    Abandoned Equipment Removal: Within ninety (90) days of the Effective Date, Defendant shall remove from the Facility all abandoned equipment and supplies stored outdoors and not under cover, *i.e.*, equipment and supplies not in current use nor expected to be used within the foreseeable future that are exposed to rainfall.

iv.    Improved Operating Procedures: Within thirty (30) days of the Effective Date, Defendant shall commence improved operating procedures for the two designated blasting buildings, designed to minimize conveyance of grit and associated pollutants to outside the building. At the end of each work day, Defendant shall clean blasting abrasives from the floor of the blasting rooms and ensure no material has been tracked from the rooms. Defendant shall sweep and remove all blasting abrasives from the blasting room floors prior to driving trucks or forklifts into the rooms to transport products and otherwise vacuum abrasive grit off the floor of the building prior to opening the large doors to the building to maximize containment of grit within the building/minimize spreading of grit to ground surface outside of the building.

v.    Implementation of Pre-Rain Protocol: Within thirty (30) days of the Effective

[Proposed] Consent Decree

Date, Defendant shall institute a formal pre-rain protocol, for implementation in advance of a precipitation event forecasted to occur with a probability of fifty percent (50%) or greater, by the National Weather Service, at observation station Los Angeles / USC Campus Downtown (KCQT). The protocol shall involve the inspection, maintenance, and as needed replacement of drop inlet filtration socks and filter baskets. In addition, all uncovered waste bins, stands used for painting and coating operations, and finished or unfinished products with a potential to release pollutants shall be covered with tarps or placed under storm resistant shelters. Upon installation of an advanced treatment system this protocol may be modified based on the system selected and observed treatment performance.

vi.   Hazardous Material Storage: Within thirty (30) days of the Effective Date, Defendant shall store all hazardous substances and wastes under cover, on a sealed surface equipped with secondary containment in secured and labeled containers and shall further (a) label the waste containers with the name, description of the waste, and the current storage start date, (b) keep the containers, containment and storage areas clean, dry and free of spills, oil residues, trash, and debris, (c) maintain spill clean-up supplies in the waste storage areas; (d) Maintain a current inventory of hazardous materials and wastes (*e.g.*, batteries, waste oils, hydraulic oil/fluid, antifreeze, oil filters, oily rags, used air filters, recycled fuels) generated onsite, and (e) inspect hazardous materials and wastes storage areas daily for proper implementation and maintenance of control measures and containment integrity.

vii.   Vehicle Maintenance: Commencing on the Effective Date, the Defendant shall perform maintenance activities only in designated work areas. If the Defendant must perform vehicle or equipment maintenance activities outdoors, Defendant shall place absorbent materials on the ground surface where any waste fluids or materials are likely to spill during such maintenance activity. Defendant shall

8

1    immediately contain, capture, and clean up any discharge or spills of waste

2    vehicle fluids to the ground.

3    viii.    Site Wash Down Procedures: Commencing on the Effective Date, Defendant

4    shall not wash down industrial areas unless it collects and contains on site all

5    wash water, and ensures proper and authorized disposal of all waste water into

6    the sanitary sewer.

7    ix.    Inspections, and Site and BMP Operations: Commencing on the Effective Date,

8    Defendant shall inspect operation work areas daily to ensure adequate

9    implementation and maintenance of good housekeeping/best management

10   practices designed to minimize pollution levels in storm water discharges from

11   the Facility.

12   17.   Maintenance of Storm Water System: Defendant shall implement the following storm

13   water system conveyance BMPs.

14   i.    Commencing on the Effective Date, Defendant shall limit storm water

15   discharges to only the Designated Discharge Locations designated in its Storm

16   Water Pollution Prevention Plan ("SWPPP") for the Facility.

17   ii.   Within thirty (30) days of the Effective Date, Defendant shall inspect the

18   perimeter of the Facility and implement such measures as are necessary to

19   prevent water from discharging from the Facility perimeter at any location

20   other than Designated Discharge Locations.

21   iii.   Prior to October 1, 2020, Defendant shall have all components of the Facility's

22   Storm Water conveyance system cleaned.

23   iv.   Defendant shall clean the Facility's storm water conveyance system once per

24   month, or more as necessary to comply with the Industrial Storm Water Permit

25   and this Consent Decree.

26   v.    Defendant shall regularly monitor and maintain all of the Facility's Storm

27   Water conveyance system and treatment or retention structures in a manner that

28   ensures they are kept free of debris and materials not related to the control and

9

1    treatment of storm water.

2      vi. From June 30 to September 30 of each year that this Consent Decree is in

3       effect, Defendant shall cover each storm water drop inlet with a solid material

4       that will prevent dust and solids from collecting in the inlet.

5      18. <u>Structural BMPs</u>: Defendant shall implement structural BMP measures in accord

6    with the following paragraphs.

7      19. <u>Structural BMPs Plan</u>: By May 1, 2020, Defendant shall provide to Waterkeeper a

8    plan for installing at the Facility structural BMPs capable of providing treatment to all storm

9    water discharges from the Facility (a) to a level commensurate with Best Available Technology

10   Economically Achievable (BAT) and the Best Conventional Pollutant Control Technology

11   (BCT), (b) to a level necessary to ensure that pollutant levels in storm water discharges do not

12   exceed Numeric Action Levels (NALs), and (c) to make reasonable progress towards elimination

13   of storm water discharges containing levels of pollutants exceeding applicable water quality

14   standard based values set forth in Table 1. The structural BMPs plan shall include time schedules

15   for implementation of the specified BMPs. Structural BMPs shall include installing sufficient

16   storm water retention and treatment capacity to ensure that all storm water is treated prior to

17   discharge to a level commensurate with BAT and BCT and, that a minimum, treatment systems

18   are sized to have sufficient capacity to treat the storm water discharge from the Facility

19   generated in a Design Storm. An appropriate storm water treatment system, commensurate with

20   BAT and BCT would be an above- or below-ground advanced treatment system and retrofits to

21   existing drainage to route runoff to the treatment system. Defendant shall inspect, install, and

22   operate an analogous advanced treatment system.

23     20. <u>Structural BMPs Plan Review</u>: Waterkeeper shall have thirty (30) days upon receipt

24   of Defendant's Structural BMPs Plan to provide Defendant with comments. Within thirty (30)

25   days of Defendant's receipt of Waterkeeper's comments on the Structural BMPs Plan, Defendant

26   shall accept and incorporate Waterkeeper's comments into the Plan, or shall provide

27   Waterkeeper with a written explanation if Defendant is declining to develop and/or implement

28   any of Waterkeeper's recommendations. Any disputes as to the adequacy of the Structural BMPs

10

1    Plan shall be resolved pursuant to the Dispute Resolution provisions of Part XIII (DISPUTE

2    RESOLUTION).

3        21.   <u>Structural BMPs Plan Implementation:</u> By October 1, 2020, Defendant shall install a

4    storm water treatment system at the Facility that is approved pursuant to the preceding

5    paragraph. Defendant shall thereafter properly operate and maintain the treatment system for the

6    life of the Consent Decree.

7        **B.   Action Plan for Further Reduction of Pollutants in Discharges**

8        22.   <u>Action Plan for Table 1 Exceedances</u>: If any storm water sample contains a level of

9    contaminant above the NAL or Table 1 water quality standard-based levels, Defendant shall

10   submit a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan"). In any

11   year that an Action Plan is required, Defendant shall submit it to the Waterkeeper by June 30

12   following the storm events and storm sampling that indicated the need for an Action Plan. This

13   deadline shall be extended to August 1 if a storm occurring after April 1 is part of the events

14   triggering the need for an Action Plan.

15       23.   <u>Action Plan Requirements</u>: Each Action Plan submitted shall include at a minimum:

16   (1) the identification of the contaminant(s) discharged in excess of the NAL or Table 1 water

17   quality standard-based levels, (2) an assessment of the source of each contaminant exceedance,

18   (3) the identification of additional BMPs, including treating storm water prior to discharge from

19   the Facility, that will be implemented to achieve compliance with the NAL or Table 1 water

20   quality standard-based levels, and (4) time schedules for implementation of the proposed BMPs.

21   The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as

22   possible, but in no case later than October 1 of each year that the Consent Decree is in effect.

23   The following BMPs should generally be evaluated to attain NAL levels and make reasonable

24   progress towards attainment of Table 1 water quality standard-based levels:

25         a.   <u>Hydraulic Controls</u>:  installation of additional berms or equivalent structural

26   controls (if necessary to reduce or prevent storm water from flowing into or, other than through

27   the engineered storm water conveyance system or storm water retention or treatment facilities).

28         b.   <u>Detention</u>: On-site retention or detention of storm water  (including, as

11

1   appropriate means to infiltrate storm water on-site in a fashion that does not risk groundwater

2   contamination, such as through well engineered bioswales or rain gardens or installation of

3   pervious paving or dry wells) to minimize storm water discharges (overall or from specific areas)

4   or to detain storm water runoff for sufficient detention time so as to reduce pollutants in the

5   discharge.

6          c.    Sweeping: The increased/more frequent use of regenerative sweepers and

7   manual sweeping in otherwise inaccessible areas.

8          d.    Treatment Systems: installing additional or improving existing treatment

9   systems that would provide more effective filtration treatment of storm water prior to discharge

10   than currently installed systems.

11          e.    Evaluation of BMPs:  replacing, rehabilitating, or eliminating existing BMPs,

12   taking into account the age of the BMPs involved or employed, the engineering aspect of the

13   application of various BMPs, and any adverse environmental impact of the BMPs.

14          f.    Such other additional BMPs as Defendant deems appropriate for evaluation.

15       24.   Action Plan Review: Waterkeeper shall have thirty (30) days upon receipt of

16   Defendant's Action Plan to provide Defendant with comments. Within thirty (30) days of

17   Defendant's receipt of Waterkeeper's comments on the Action Plan, Defendant shall accept and

18   incorporate Waterkeeper's comments of recommended additional BMPs into the Action Plan, or

19   shall provide Waterkeeper with a written explanation if Defendant declines to develop and/or

20   implement any of Waterkeeper's recommended additional BMPs. Disputes regarding the

21   adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set

22   forth in the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved

23   pursuant to the Dispute Resolution provisions of Part XIII (DISPUTE RESOLUTION).

24       25.   Defendant shall contact Waterkeeper at least one week in advance of the deadline to

25   request an extension of the deadline, if necessary, to implement any structural BMPs requiring

26   agency approval. Waterkeeper's consent to Defendant's requested extension shall not be

27   unreasonably withheld.

28       26.   When an Action Plan is completed and approved by Waterkeeper or finalized

1   pursuant to Dispute Resolution, Defendant shall revise its SWPPP and/or Monitoring &

2   Reporting Plan ("M&RP") as applicable within thirty (30) days to reflect the changes required by

3   the Action Plan. Defendant shall notify Waterkeeper in writing when the Action Plan has been

4   completely implemented. Defendant shall implement any Action Plan approved pursuant to this

5   paragraph as a requirement of the Consent Decree.

6        **C. Site Mapping**

7        27.   Site Changes and Mapping: Within sixty (60) days following implementation of any

8   new structural BMPs or changed industrial operations at the Facility, Defendant shall submit to

9   Waterkeeper a revised Site Map. The Site Map shall clearly identify the property boundaries,

10  ground type (pervious or impervious) on all portions of the Facility; berms, dikes, walls and all

11  other structures controlling the flow of surface water, all components of the Facility storm water

12  conveyance and treatment system, including but not limited to all storm water pipes, drop inlets,

13  any storm water storage or treatment infrastructure (as well as the capacity of such infrastructure)

14  and all other physical structures or items relevant under this Consent Decree. The Site Map shall

15  further indicate the direction and pattern of storm water flows at and off the Facility.

16       28.   Designated Discharge Points:  Within sixty (60) days of the Effective Date or within

17  thirty days of any material changes to the Facility, to the extent not already implemented,

18  Defendant shall identify on the Site Map every location at which storm water and non-storm

19  water is known to be discharged or which may potentially be discharged including all driveways

20  ("Designated Discharge Points or Designated Discharge Locations"). Each Designated Discharge

21  Point or Discharge Location shall be numbered and clearly labeled on the Site Map.

22       29.   Designation of Storage Areas:  Within sixty (60) days of the Effective Date or within

23  thirty days of any material changes to the Facility, to the extent not already implemented, the

24  outdoor storage areas at the Facility where materials used at the Facility are stored ("Material

25  Storage Areas") shall be designated on the Facility's Site Map.

26       30.   Designation of Industrial Activity Areas:  Within sixty (60) days of the Effective

27  Date or within thirty days of any material changes to the Facility, to the extent not already

28  implemented, the portion of the Facility where industrial activities occur shall be designated on

the Facility's Site Map as the "Industrial Activity Areas."

31.   <u>Pollutant Generating Activities</u>:  Within sixty (60) days of the Effective Date or within thirty days of any material changes to the Facility, to the extent not already implemented, the Site Map for the Facility shall fully describe all industrial activities that generate dust, particulates or other pollutants that may be deposited within the Facility's boundaries and identify their discharge locations and the characteristics of such dust, particulate and other pollutants; and a description of the primary areas of the Facility where dust, particulate and other pollutants would settle.

32.   <u>Designation of All Sampling Locations</u>: Within sixty (60) days of the Effective Date or within thirty days of any material changes to the Facility, to the extent not already implemented, the Site Map shall set identify precisely where storm water samples are to be collected.

**VIII. SAMPLING, MONITORING, INSPECTION & REPORTING**

**A. Sampling Program**

33.   Defendant shall collect storm water discharge samples from each Discharge Point at the Facility according to the following sampling schedule:

(a) During the first and second fiscal years (*i.e.*, July 1 to June 30) of this Consent Decree, and except as set forth below in this paragraph, Defendant shall collect storm water samples from discharges generated by five Qualifying Storm Events per Wet Season from each Discharge Point at the Facility (*i.e.*, shall take samples on five separate days during which storm water discharges from the Facility are occurring). If three consecutive samples from each of the Discharge Points results in pollutant levels below the Water quality standard-based levels set forth in Table 1 for any parameter sampled, Defendant need not conduct additional sampling for such parameter.

(b) During subsequent fiscal years during the term of this Consent Decree, Defendant shall collect storm water samples from discharges generated by four Qualifying Storm Events per year from each Discharge Point at the Facility.

(c) Defendant shall analyze each storm water sample collected for each of the parameters listed

14

on the Table 1. Should operations change at the Facility, Defendant shall conduct sampling for any additional priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in Defendant's storm water discharges as a result of the changed operations.

(d) Where Defendant discharges storm water into a storm drain inlet or catch basin, Defendant may choose to collect a sample below any insert or treatment system. If Defendant chooses not to collect a post-filtration or post-treatment sample, the quality of storm water samples entering a storm drain inlet or catch basin containing a fabric insert shall be considered the same as a sample collected below the insert.

34.   While this Consent Decree is in effect, Defendant shall take all storm water samples from Qualifying Storm Events as defined by the Industrial Storm Water Permit (or then applicable NPDES permit) within the first four hours that Defendant's staff observes flow at the Discharge Points during any given storm event.

35.   If Defendant does not collect the required number of samples from the designated sampling locations due to lack of discharge, Defendant shall provide rain gauge data for the Wet Season to LA Waterkeeper along with a copy of the required observations stated in Paragraphs 38-41 for any day on which precipitation was recorded at the rain gauge, but no samples were collected by Defendant. Defendant shall provide this rain gauge data to LA Waterkeeper by June 1 following the previous year in which insufficient samples were collected.

36.   Defendant shall have all storm water samples collected pursuant to this Decree delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times. Defendant shall direct the laboratory to conduct analysis sufficient to detect individual constituents at or below the Water quality standard-based levels set forth in the attached Table 1.

37.   Defendant shall provide to Waterkeeper complete results from Defendant's sampling and analysis of storm water discharges to Waterkeeper within fourteen (14) days of receipt of the laboratory report from each sampling event.

**B. Visual Observations**

38.   <u>Visual Observations</u>: During the life of this Consent Decree, Defendant shall conduct

15

1   visual observations at all Designated Discharge Locations during every rain event sampled. In

2   addition, Defendant shall observe all potential discharge locations on the perimeter of the

3   Facility to determine if discharge of storm water is occurring.

4          39.   During such wet weather visual observations, appropriately trained Defendant staff

5   shall monitor for the presence of visually observable oil sheens in storm water discharges and/or

6   discolored or turbid storm water discharges. Defendant shall take representative photographs of

7   storm water discharges during all observed rain events, including photographs of any visually

8   observable oil sheens in storm water discharges and/or discolored or turbid storm water

9   discharges. These photographs and records shall be made available to LA Waterkeeper within

10  seven (7) days upon written request.

11         40.   Dry Weather Visual Observations: At least once per month, appropriately trained

12  Defendant employees shall conduct visual inspections of the Facility. Such inspections shall

13  include driveways, outdoor storage areas, and all Industrial Activity Areas. All Designated

14  Discharge Locations shall also be inspected for accumulation of dust, sediment, sand, grit, oily

15  substances, oily sheens upon any standing water, and other materials associated with operations

16  at the Facility. Such inspections shall further include observations of all storm water BMPs at the

17  Facility to ensure that operational BMPs are being implemented, structural BMPs are in good

18  condition or working order, and that BMPs have been effective in producing clean conditions at

19  the Facility (*e.g.*, an absence of oil stains on paved or unpaved surfaces, absence of particulate

20  debris or other debris on ground surfaces, absence of oil, or particulate debris or grit or other

21  debris in storm water conveyance structures). Such inspections shall further include observation

22  as to whether there are any non-storm water discharges from the Facility.

23         41.   During such visual inspections, appropriately trained Defendant staff shall photo

24  document their visual observations of the status of BMPs. These photographs and records shall

25  be made available to LA Waterkeeper within seven (7) days upon written request.

26         **C. Compliance Monitoring**

27         42.   Site Inspections. Waterkeeper and its representatives may conduct up to two (2) site

28  inspections per year at the Facility during the life of this Consent Decree. The site inspections

16

shall occur during normal business hours and Waterkeeper shall provide Defendant with forty-eight (48) hours' notice prior to each site inspection.

43.   During the site inspections, Waterkeeper and/or its representatives shall be allowed access to the Facility's SWPPP, M&RP, and other monitoring records, reports, and sampling data for the Defendant Facility. During the site inspections, Waterkeeper and/or its representatives may collect samples of discharges from the Facility. A certified California laboratory shall analyze storm water samples collected by Waterkeeper and copies of the lab reports shall be provided to Defendant within five (5) business days of receipt. At the request of Defendant, the samples shall be split and appropriately preserved by the Waterkeeper's laboratory for up to the appropriate hold time for the sample and one half provided to Defendant so as to allow Defendant to have its own certified California laboratory analyze the samples, in which case Defendant shall provide the laboratory results to Waterkeeper within five (5) business days of receipt. Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection. If Waterkeeper takes photographs and/or video recording, Waterkeeper shall provide Defendant with the photographs and/or video within fourteen (14) calendar days after the Site Inspection. Waterkeeper agrees that all individuals participating in a Site Inspection will execute, as necessary, waivers, releases and similar agreements.

44.   In the event that there is substantial deviation in the results of the laboratory analysis of the samples taken by Waterkeeper and the split samples provided to or taken by Defendant such that one set of results for a given storm event shows levels of contaminants above those in Table 1 and the other set of results shows levels of contaminants below those in Table 1, the parties shall promptly meet and confer and attempt in good faith to reach agreement on whether the sample results for the given storm event should be considered valid for purposes of this Consent Decree or whether they should instead be disregarded and another replacement sample taken (as feasible) in a following storm event. If the parties are unable to reach agreement, this matter shall be decided pursuant to the Dispute Resolution provisions of Part XIII (DISPUTE RESOLUTION).

**D. Cleaning, Maintenance, and Inspection Logs**

[Proposed] Consent Decree

45.   During the life of this Consent Decree, Defendant shall keep contemporaneous logs documenting the performance of cleaning and maintenance activities performed pursuant to paragraph 16 and inspection activity performed pursuant to paragraphs 38-41. The logs shall indicate the staff who completed the cleaning, maintenance, or inspection activity and the date the activity was performed. The logs shall further include notes sufficient to describe the completed activity and any pertinent information that the activity yielded (*e.g*., such as whether BMPs are an adequate condition or whether the Facility is free of oil, debris, or other conditions likely to lead to pollutant loading in storm water discharges).

**E. Reporting**

46.   During the life of this Consent Decree, Defendant shall provide Waterkeeper with a copy of all documents pertaining to the Industrial Storm Water Permit submitted to or received from the Regional Board or the State Board concerning the Facility, including all documents and reports submitted to the Regional Board as required by the Industrial Storm Water Permit. Documents and reports sent by Defendant to the Regional Board or State Board shall be electronically mailed to Waterkeeper contemporaneously with submission to the Regional Board or State Board. Documents received by Defendant from the Regional Board or State Board shall be electronically mailed to Waterkeeper within three (3) business days of receipt.

**IX. EMPLOYEE TRAINING**

47.   Within forty-five (45) days of the Effective Date, Defendant shall develop and implement a formal training program, including any training materials needed for effective implementation of the training program ("Training Program"), to ensure (1) that there are sufficient staff assigned to achieve compliance with the Industrial Storm Water Permit and this Consent Decree, and (2) that these employees are properly trained to perform the required compliance activities. At a minimum the Training Program shall familiarize all employees at the Facility with the requirements of the Industrial Storm Water Permit or then applicable NPDES permit and this Consent Decree.

48.   The Training Program shall require specific training to include at least the following:

a.   <u>Non-Storm Water Discharge Training</u>. The Defendant shall train all staff on the

18

1   Industrial Storm Water Permit's prohibition of non-storm water discharges, so that employees

2   know what non-storm water discharges are and how to detect them and prevent them.

3           b.      BMP Training. The Defendant shall train all employees on BMP

4   implementation and maintenance to ensure that BMPs are implemented effectively to prevent the

5   exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and

6   to ensure the proper treatment of storm water at the Facility.

7           c.      Sampling and Record Keeping Training. Defendant shall assign and train

8   adequate staff necessary to collect storm water samples from each discharge location as required

9   by this Consent Decree and the Industrial Storm Water Permit. Staff training shall include

10   training in proper sampling protocols, including chain of custody requirements, to ensure storm

11   water samples are properly collected, stored, and submitted to a certified laboratory and adequate

12   records are kept of all sampling events and analysis results.

13           d.      Visual Observation Training. The Defendant shall provide training to all

14   individuals performing visual observations at the Facility pursuant to this Consent Decree and

15   the Industrial Storm Water Permit and training in proper record keeping for all such visual

16   observations.

17       49.   Defendant shall provide training on an annual basis, or as otherwise required to

18   ensure compliance with the terms of this Consent Decree, by a private consultant or a

19   representative of Defendant who is familiar with the requirements of this Consent Decree and the

20   Industrial Storm Water Permit. The training shall be repeated as necessary to ensure that all such

21   employees are familiar with the requirements of this Consent Decree, the Industrial Storm Water

22   Permit, and the Facility's SWPPP and M&RP. All new staff will receive this training before

23   assuming responsibilities for implementing the SWPPP and/or M&RP.

24       50.   The Defendant shall maintain training records to document compliance with this

25   section, and shall provide Waterkeeper with a copy of these records within thirty (30) days of

26   receipt of a written request. The Training Program shall be specified in the Defendant's SWPPP.

27   **X. STORM WATER POLLUTION PREVENTION AND MONITORING AND**

28       **REPORTING PLAN**

51.   Within sixty (60) days after the Effective Date of this Consent Decree, Defendant shall revise its SWPPP and its M&RP to:

a.   Incorporate fully the requirements of the Industrial Storm Water Permit, and this Consent Decree, including but not limited to revisions to the SWPPP to specify performance of the Remedial Measures referred to in PART XX (REMEDIAL MEASURES).

b.   Identify the individuals responsible for compliance with the Industrial Storm Water Permit and this Consent Decree including specifying which individual is responsible for what area of compliance (*e.g*., John Doe, collecting samples).

c.   Describe all BMPs and how they will be operated and/or maintained.

d.   Denote all actions taken to control the deposition of dust, particulate matter and other pollutants at the Facility.

e.   Describe where and when storm samples are to be collected and explain why the sample points are representative of off-site discharge and include a checklist that must be used by trained Facility personnel when conducting the storm water sampling required under the Industrial Storm Water Permit and this Consent Decree.

f.   Describe where and when visual inspections of the Facility are to be performed and include a visual inspection checklist that must be used by trained Facility personnel when conducting the visual observations required under the Industrial Storm Water Permit and this Consent Decree.

52.   Commenting on the SWPPP and M&RP Revisions. The Defendant shall submit the revised SWPPP and M&RP to Waterkeeper for review and comment as soon as it is completed but in any event no later than seventy-five (75) days after the Effective Date. Waterkeeper shall provide comments, if any, to the Defendant within thirty (30) days of receipt of the SWPPP and M&RP. The Defendant shall incorporate Waterkeeper's comments into the SWPPP and M&RP or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving Waterkeeper's comments. Any disputes over the adequacy of the revised SWPPP and M&RP shall be resolved pursuant to the Dispute Resolution provisions of Part XIII (DISPUTE RESOLUTION).

20

53.   <u>Additional Revisions to SWPPP and M&RP</u>. The Defendant shall revise the SWPPP and M&RP if there are any changes in the Facility's operations, including but not limited to changes to storm water discharge point(s) or changes or additions to the BMPs at the Facility resulting from an Action Plan. The Defendant shall submit any revised SWPPP and M&RP to Waterkeeper for review and comment within ten (10) days of completion. Waterkeeper shall provide comments, if any, to the Defendant within thirty (30) days of receipt of any revised SWPPP and M&RP. The Defendant shall incorporate Waterkeeper's comments into any revised SWPPP and M&RP, or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments. Any disputes as to the adequacy of the SWPPP and M&RP shall be resolved pursuant to the Dispute Resolution provisions of Part XXV (DISPUTE RESOLUTION).

**XI. MITIGATION, FEES, AND COSTS**

54.   <u>Supplemental Environmental Project Funding</u>:  As mitigation of the violations alleged in Waterkeeper's Notice and Complaint, Defendant shall tender payment to the Rose Foundation for Communities and the Environment the sum of $25,000 for supplemental environmental projects relating to the reduction, prevention or mitigation of, or research on, the effects of discharges of pollutants to the Los Angeles River watershed and/or Pacific Ocean waters adjoining Los Angeles. Defendant shall pay the first $10,000 of this sum within thirty (30) days of the Effective Date and shall make monthly payments of $2,500 for the next six months thereafter. Such payments shall be sent via certified mail, return receipt requested, to the following address (with notice to the Waterkeeper that such payments have been sent):

> Tim Little
> Rose Foundation for Communities and the Environment
> 1970 Broadway, Suite 600
> Oakland, California  94612-2218

55.   <u>Reimbursement of Fees and Costs</u>:  Defendant shall reimburse Waterkeeper in the amount of $58,000 to help defray Waterkeeper's investigation fees and costs, expert fees and costs, reasonable attorneys' fees, and all other costs incurred as a result of investigating the activities at the Facility, bringing these matters to Defendant's attention, and negotiating a

[Proposed] Consent Decree

resolution of this action in the public interest. Defendant shall pay the first $13,000 of this sum within thirty (30) days of the Effective Date and shall make monthly payments of $3,750 for the next 12 months thereafter. Such payments shall be made by check made payable to Environmental Advocates Attorney Client Trust Account. Payment shall be sent via certified mail, return receipt requested, to the following address:

> Christopher A. Sproul
> Environmental Advocates
> 5135 Anza Street
> San Francisco, California  94121

56.    <u>Compliance Monitoring Funds</u>:  Defendant shall reimburse Waterkeeper Four Thousand Dollars ($4,000) per year for costs and fees associated with monitoring Defendant's compliance with this Consent Decree. Monitoring activities include site inspections, review of the Defendant's reports, including the monitoring data and visual inspection documentation included therein, discussion with representatives of Defendant concerning the effectiveness of remedial measures and the potential need for additional remedial measures. Defendant shall tender the first of these $4,000 payments within thirty (30) days of the Effective Date by check payable to "Los Angeles Waterkeeper." Defendant shall tender subsequent payments by June 30 of each year also via check payable to "Los Angeles Waterkeeper." Defendant shall payments via certified class mail, return receipt requested to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, California 90401.

57.    <u>Action Plan Payments</u>: Any time Defendant submits an Action Plan to Waterkeeper as required by this Consent Decree, Defendant shall simultaneously tender an additional compliance monitoring payment in the amount of Five Thousand Dollars ($5,000.00) along with the Action Plan. Action Plan payments are to be made payable to Waterkeeper in the manner described in the previous paragraph.

**XII. STIPULATED PAYMENTS**

59.    In the event Defendant fails to submit to Waterkeeper any document, report or other communication required under paragraphs 19, 20, 22, 24, 27, 37,46, 50, 52, 53, and 54 of this Agreement, for any report more than ten (10) days late, Defendant shall pay a per day payment

1  of Three Hundred Dollars ($300) commencing on the eleventh (11th) day after the report due

2  date.

3        60.   Should Waterkeeper provided written notice to Defendant that a document, report or

4  other communication required by this Consent Decree or measure of specific performance

5  required by this Consent Decree does not comply with the Consent Decree, and should

6  Defendant fail to correct the non-performance, and in good faith dispute the notice of non-

7  performance within thirty (30) days of receipt of said notice, Waterkeeper shall or invoke the

8  Dispute Resolution provisions of Part XIII (DISPUTE RESOLUTION).  Should Defendant

9  prevail at the Dispute Resolution, both Parties shall bear their respective attorneys' fees and

10  costs.  Should Waterkeeper prevail at the Dispute Resolution, Defendant shall be responsible for

11  Waterkeeper's attorneys' fees and costs (subject to proof) and, whatever penalty the court may

12  impose.

13        61.   If Defendant fails to submit to any payments required under paragraphs 54, 56, 57,

14  and 58 of this Consent Decree within ten (10) days of the date due, Defendant shall incur a Three

15  Hundred Dollar ($300) per day payment for each day that Defendant's payment continues to be

16  late.

17        62.   Any stipulated payments pursuant to this Part shall be paid to the Rose Foundation

18  for Communities and the Environment within fourteen (14) days of the resolution of the event

19  that precipitated the Stipulated Payment liability. Stipulated payments shall be used for projects

20  relating to the reduction, prevention or mitigation of, or research on, the effects of discharges of

21  pollutants to the Los Angeles River watershed and/or Pacific Ocean waters adjoining Los

22  Angeles. Defendant shall send Waterkeeper notice of any such stipulated payments within seven

23  (7) days of tendering such payments.

24  **XIII. DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE**

25        62.   <u>Dispute Resolution Process</u>: If a dispute under this Consent Decree arises, or either

26  Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a

27  meet and confer within ten (10) calendar days of receiving written notification from the other

28  Party of a request for a meeting to determine whether a violation has occurred and to develop a

1  mutually agreed upon plan, including implementation dates, to resolve the violation. If the

2  Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least

3  seven days have passed after the meet and confer occurred or should have occurred, either Party

4  shall be entitled to all rights and remedies under the law, including bringing a motion before the

5  District Court of California, Central District, which shall retain jurisdiction over the Action for

6  the limited purposes of enforcement of the terms of this Consent Decree. The Parties agree not to

7  object to an expedited hearing schedule on any Dispute Resolution motion if one of the Parties

8  requests one.

9       63.  Burden of Proof: In the event of any disagreement or dispute between Waterkeeper

10  and Defendant over the necessity or appropriateness of implementing any particular BMP or set

11  of BMPs, including in any formal or informal proceeding brought to enforce the terms of this

12  Consent Decree, Defendant shall bear the burden of demonstrating that its BMPs, collectively,

13  constitute BAT/BCT for the Facility, or that it is in compliance with the terms of this Consent

14  Decree. Waterkeeper shall not be required to prove that Defendant's BMPs do not constitute

15  BAT/BCT.

16  **XIV. NOTICES AND SUBMISSIONS**

17       64.  Except as otherwise expressly provided in this Consent Decree, whenever under the

18  terms of this Consent Decree notice is required to be given or a report or other document is

19  required to be forwarded by one Party to another, it shall, to the extent feasible be sent to the

20  following individuals as electronic computer files at the e-mail addresses specified below. If a

21  given document cannot be e-mailed, it shall be mailed by U.S. Mail to the following addresses.

22  Any change in the individuals designated by either Party must be made in writing to the other

23  Parties.

24  As to Waterkeeper:

25       Kelly Clark
     Staff Attorney

26       Los Angeles Waterkeeper

27       120 Broadway, Suite 105
     Santa Monica, CA 90401

28       kelly@lawaterkeeper.org

[Proposed] Consent Decree

1

2

With copies to:

3

Bruce Reznik
Executive Director

4

Los Angeles Waterkeeper
bruce@lawaterkeeper.org

5

As to the Defendant:

6

7

Alexander Briseno
Operations Manager

8

Commercial Sand Blast Company
2678 East 26th Street
Vernon, CA 90058

9

323-587-1256
alex@commercialsandblast.com

10

Exequiel Tostado

11

Senior Manager
Associated Environmental Management

12

812 Fremont Ave., #100
South Pasadena, CA 91030

13

213-389-9600
etostado@essociated.com

14

15

**XV. MISCELLANEOUS PROVISIONS**

16

65.    **Execution in Counterparts:** The Consent Decree may be executed in one or more

17

counterparts which, taken together, shall be deemed to constitute one and the same document.

18

66.    **Severability**:  In the event that any of the provisions of this Consent Decree is held

19

by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely

20

affected.

21

67.    **Construction**:  The language in all parts of this Consent Decree, unless otherwise

22

stated, shall be construed according to its plain and ordinary meaning.

23

68.    **Integrated Consent Decree**:  All agreements, covenants, representations and

24

warranties, express or implied, oral or written, of the Parties concerning the subject matter of this

25

Consent Decree are contained herein.

26

69.    **Facsimile Signatures:**  Signatures of the Parties transmitted by facsimile shall be

27

deemed binding.

28

70.    **Force Majeure**:  Defendant shall not be considered to be in default in the

performance of any of its Consent Decree obligations when its failure to perform is due to a "Force Majeure." A Force Majeure event is any act of God, war, fire, earthquake, flood, natural catastrophe, and restraint by court order or public authority. A Force Majeure event does not include normal inclement weather, such as anything less than or equal to a 100 year/24 hour storm event, or inability to pay. Defendant shall have the burden of establishing that a force majeure event that it could not reasonably have been expected to avoid, and which by exercise of due diligence it has been unable to overcome has concluded its compliance. Defendant shall exercise due diligence to resolve any Force Majeure event and return to compliance. If the Defendant claims existence of a Force Majeure event, it shall notify Waterkeeper in writing within twenty-one (21) calendar days of the date that the Defendant first knew of the event or circumstance that caused or would cause a violation of this Consent Decree. The notice shall describe the reason for the nonperformance and specifically refer to this Section. It shall describe: a) the anticipated length of time the delay may persist; b) the cause or causes of the delay; c) the measures taken or to be taken by the Defendant to prevent or minimize the delay; d) the schedule by which the measures will be implemented; and v) the anticipated date of compliance. The Defendant shall adopt all reasonable measures to avoid and minimize such delays. Any disputes between the parties concerning the existence of a Force And shall be resolved pursuant to the Dispute Resolution provisions of Part XIII (DISPUTE RESOLUTION).

71.    The parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

**XVI. EFFECTIVE AND TERMINATION DATES**

72.   Within three (3) days of the final signature of the Parties, Waterkeeper shall submit this executed Consent Decree to EPA and DOJ for a 45-day review and comment period pursuant to CWA section 505(c)(3) and 40 C.F.R. § 135.5. The Court shall not enter its judgment on consent until the expiration of this review and comment period. If EPA or DOJ requests or suggests revisions to this Consent Decree or objects to entry of this Consent Decree in the form presented, the Parties shall within ten (10) days meet and confer on whether to revise this Consent Decree in accord with the requested or suggested revisions provided by EPA or DOJ

26

and/or otherwise to accommodate EPA or DOJ's objections. If the Parties do not mutually agree to any such revisions or modifications, the Parties shall so notify the Court and request entry of the Consent Decree in the form drafted. If the Court objects to entry of this Consent Decree in the form presented, the Parties will attempt in good faith to agree to revisions of this Consent Decree necessary so that it is acceptable to the Court.

73.      This Consent Decree shall terminate on August 31, 2023 the Effective Date provided that Defendant has made all monetary payments owed under the Consent Decree and there is no pending Dispute Resolution proceeding pursuant to the provisions of Part XIII (DISPUTE RESOLUTION). If Defendant has not made all monetary payments owed under the Consent Decree or if there is a pending Dispute Resolution proceeding, the Consent Decree shall be extended until Defendant has made all monetary payments owed under the Consent Decree and all pending Dispute Resolution proceedings have been resolved.

75.   Alternatively, Defendant may move the Court to terminate the Consent Decree at any time and shall be entitled to Consent Decree termination provided that the following conditions are met:

a.      Defendant has made all monetary payments owed under the Consent Decree;

b.       there is no pending Dispute Resolution proceeding;

c.      Defendant has fully implemented the remedial measures requirements specified in Part VII, the SWPPP requirements specified in Part X, and the sampling, monitoring, inspection and reporting requirements specified in Part VIII; and

d.      The levels of pollutants in storm water discharges from the Facility have all been below the NALs in Table 1 in four (4) consecutive storm water samples taken at each discharge point.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth above.

**IT IS SO ORDERED:**

1   Date: _April 17, 2020_

2                                      Honorable Michael W. Fitzgerald
                                       UNITED STATES DISTRICT COURT JUDGE
3                                      CENTRAL DISTRICT OF CALIFORNIA

4   APPROVED AS TO FORM:

5   ENVIRONMENTAL ADVOCATES

6

7

8   Dated:      February 27, 2020         By: _Christopher A. Sproul_
                                              Christopher Sproul
9                                             Attorney for Plaintiff

10

11

12  Dated:      _____2020         By: _____
                                              James Jackson
13                                            Attorney for Defendant

14

15  APPROVED AS TO CONTENT:

16

    Dated:      _____2020         By: _____
17                                            Kelly Clark
                                              Los Angeles Waterkeeper
18

19  Dated:      _____2020         By: _____
20                                            Alexander Briseno
                                              Commercial Sandblast
21

22

23

24

25

26

27

28

                                       28

1    Date: _____         _____

2                                   Honorable Michael W. Fitzgerald
                                     UNITED STATES DISTRICT COURT JUDGE
3                                    CENTRAL DISTRICT OF CALIFORNIA

4    APPROVED AS TO FORM:

5    ENVIRONMENTAL ADVOCATES

6

7    Dated: _____ 2020    By: _____

8                                        Christopher Sproul
                                         Attorney for Plaintiff
9

10

11   Dated: _____ 2020    By: _____

12                                       James Jackson
                                         Attorney for Defendant
13

14   APPROVED AS TO CONTENT:

15   Dated: _2/27_____ 2020     By: _____

16                                       Bruce Reznik
17                                       Los Angeles Waterkeeper

18   Dated: _____ 2020    By: _____

19                                       Alexander Briseno
                                         Commercial Sandblast
20

21

22

23

24

25

26

27

28

1    Date: _____        _____
2                                 Honorable Michael W. Fitzgerald
                                  UNITED STATES DISTRICT COURT JUDGE
3                                 CENTRAL DISTRICT OF CALIFORNIA

4    APPROVED AS TO FORM:

5    ENVIRONMENTAL ADVOCATES

6

7    Dated: _____ 2020      By: _____
8                                          Christopher Sproul
                                           Attorney for Plaintiff
9

10

11   Dated: _____ 2020      By: _____
12                                         James Jackson
                                           Attorney for Defendant
13

14   APPROVED AS TO CONTENT:

15

16   Dated: _____ 2020      By: _____
                                           Kelly Clark
17                                         Los Angeles Waterkeeper

18   Dated: 2-24- 2020              By: _____
19                                         Alexander Briseno
                                           Commercial Sandblast
20

21

22

23

24

25

26

27

28

                                  28

1

2  Date: _____         _____
                                Honorable Michael W. Fitzgerald
3                               UNITED STATES DISTRICT COURT JUDGE
                                CENTRAL DISTRICT OF CALIFORNIA
4

5  APPROVED AS TO FORM:

6  ENVIRONMENTAL ADVOCATES

7
   Dated:        _____2020      By: _____
8                                           Christopher Sproul
                                            Attorney for Plaintiff
9

10

11 Dated:   *Feb. 20,* 2020            By: _____
12                                          James Jackson
                                            Attorney for Defendant
13

14 APPROVED AS TO CONTENT:

15

16 Dated:        _____2020      By: _____
                                            Kelly Clark
17                                          Los Angeles Waterkeeper

18

19 Dated:        _____2020      By: _____
                                            Alexander Briseno
20                                          Commercial Sandblast

21

22

23

24

25

26

27

28

                                28

**Table 1**

| Parameter | Value |
|---|---|
| Total Suspended Solids | 100 milligrams per liter ("mg/L") |
| Oil and Grease | 15 mg/L |
| pH | Between 6.5 s.u. and 8.5 s.u. |
| Zinc | 159 mg/L |
| Iron | 1.0 mg/L |
| Aluminum | .75 mg/L |
| Nitrite + Nitrate | .68 mg/L |

[Proposed] Consent Decree